**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSHUA PAYNE, | : | Civil No. 3:21-cv-1305 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| CHARLES BUTTS, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Joshua Payne ("Payne"), an inmate housed at the State Correctional

Institution, Mahanoy, Pennsylvania ("SCI-Mahanoy"), initiated this civil rights action

pursuant to 42 U.S.C. § 1983.  (Doc. 1).   The matter is proceeding via an amended

complaint.  (Docs. 18, 18-1).  Named as Defendants are Charles Butts, Craig Copper,

Margaret Gordon, Fatih Akdemir, Tracy Smith, Ross Miller, Ulli Klemm, Tami Hooker, and

John Wetzel (collectively, "Corrections Defendants").  Also named as Defendants are Jody

Smith, Elisha Friendman, and Maryann Robbins.

Presently ripe for disposition is the Corrections Defendants' motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 19).  For the reasons set forth

below, the Court will grant the motion.  The Court will also dismiss the action against Jody

Smith, Elisha Friendman, and Maryann Robbins pursuant to Federal Rule of Civil Procedure

4(m).

I.     **Allegations of the Amended Complaint**

Payne alleges that the Corrections Defendants do not provide certified Halal meals

or meats to Muslim inmates in violation of the Religious Land Use and Institutionalized

Persons Act ("RLUIPA"), the First Amendment, and the Equal Protection Clause of the

Fourteenth Amendment.  (Docs. 18, 18-1).  Payne is a member of the Nation of Islam.

(Doc. 18-1 ¶ 1).  He requested that the Corrections Defendants provide him with a certified

Halal diet with meat, consistent with his religious beliefs.  (*Id.*).  The Corrections Defendants

denied his religious diet request on September 2, 2019.  (Doc. 18 ¶ 1).  Payne further

asserts that certified Halal meats are not available for purchase in the commissary.  (Doc.

18-1 ¶¶ 49-50).  Payne alleges that the failure to provide certified Halal meals with meat

places a substantial burden on the exercise of his religion.  (*Id.* ¶ 4).

Payne asserts that the Department of Corrections provides certain religious diets to

inmates, including a kosher diet, a vegetarian diet, and a NOI/MTI diet consisting of fish,

brown rice, and beans.  (Doc. 18-1 ¶¶ 2, 34-37).  Additionally, inmates who do not qualify

for a religious diet are offered an alternative protein diet.  (*Id.* ¶¶ 3, 38).  He alleges that the

alternative diets are susceptible to contamination because they are prepared in the same

kitchen as non-vegetarian meals.  (*Id.* ¶¶ 3, 43).  Payne asserts that these alternative diets

are not nutritionally adequate and would force him to maintain a vegetarian diet, which he

believes is against his religion.  (*Id.* ¶¶ 39, 53-56).

## II.     Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not

entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

### A.   Lack of Personal Involvement

The Corrections Defendants argue that Payne fails to state a claim against them because they lack personal involvement in the alleged wrongs. (Doc. 20, pp. 4-6). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the

4

operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)

(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil

rights action must have personal involvement in the alleged wrongs. . . . Personal

involvement can be shown through allegations of personal direction or of actual knowledge

and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362

(1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must

be made with appropriate particularity in that a complaint must allege the particulars of

conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at

1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge

or involvement in depriving the plaintiff of his rights is insufficient to establish personal

involvement. *Rode*, 845 F.2d at 1208.

Payne alleges that the Corrections Defendants "meet[] monthly to review and

recommend whether [religious] requests should be accommodated." (Doc. 18 ¶ 4). He

contends that each Defendant "plays a role" in denying or approving religious

accommodation requests. (*Id.* ¶ 5). The amended complaint does not specify what role, if

any, the individual Corrections Defendants played in denying Payne's request for a Halal

diet. Further, the amended complaint does not specifically aver that any of the Corrections

Defendants attended the meeting when Payne's religious accommodation request was

reviewed. The Court finds that Payne fails to allege any personal involvement of the

Corrections Defendants and fails to set forth any factual averments that identify how they were involved in the alleged wrongdoing.

Payne also contends that he filed a grievance against all Defendants regarding the denial of his religious diet request. (Doc. 18 ¶¶ 1-2). The Defendants allegedly "denied the [] grievance on all level[s] of appeals." (*Id.* ¶ 3). Any attempt by Payne to hold the Corrections Defendants liable based on their involvement in the grievance procedure must fail. Courts have routinely held that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability). Any claims against the Corrections Defendants based on their roles in the grievance process will be dismissed.

To the extent that Payne seeks to hold any of the Corrections Defendants liable based upon their supervisory roles, this claim also fails. Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Accordingly, insofar as Payne's claims against the Corrections Defendants rely on a *respondeat superior* theory of liability, they are entitled to dismissal on this ground.

**B.     First Amendment Claim**

The First Amendment provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . " U.S. CONST. amend. 1.  It offers protection for a wide variety of expressive activities, which are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Although prisoners must be afforded "reasonable opportunities" to exercise the religious freedoms guaranteed by the First Amendment, *see Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment right to the free exercise of religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987).  Only beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. *Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972); *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000); *see also Africa v. Pennsylvania*, 662 F.2d 1025, 1029-30 (3d Cir. 1981) (identifying three indicia of religion as (1) attempting to address "fundamental and ultimate questions having to do with deep and imponderable matters," (2) being "comprehensive in nature," consisting of a "belief system" rather than "isolated teachings," and (3) recognizing the "presence of certain forma and external signs" such as the clergy and observance of holidays).  The Corrections Defendants do not appear to dispute that Payne's sincerely held religious beliefs are entitled to constitutional protection.

7

Once it is established that the individual has a belief that is "both sincerely held and religious in nature," the United States Supreme Court's *Turner v. Safley* test must be applied to determine whether the curtailment at issue is reasonably related to penological interests. *DeHart*, 227 F.3d at 51. "[*Turner*] directs courts to assess the overall reasonableness of such regulations by weighing four factors. 'First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,' and this connection must not be 'so remote as to render the policy arbitrary or irrational.' Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that 'fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests.'" *DeHart*, 227 F.3d at 51, quoting *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999) (internal citations omitted). "The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity." *Id.* at 59.

The most important prong of the *Turner* analysis requires a rational connection between the policy and the legitimate governmental interest that justifies it. *Nasir v. Morgan*, 350 F.3d 366, 372 (3d Cir. 2003). "According to *Turner*, a regulation will be sustained unless 'the logical connection between the regulation and the asserted goal is so

remote as to render the policy arbitrary or irrational.'"  *Id.*, *citing Turner*, 482 U.S. at 89-90.

"'[T]he burden is not on the state to prove the validity of the challenged prison regulation but

instead is on the inmate to disprove it."  *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir.

2003).

With respect to the first *Turner* factor, the Corrections Defendants contend that the

decision to provide alternative religious meals, instead of a certified Halal diet with meat, is

rationally related to legitimate penological goals.  They contend that the practice is in place

for reasons which are rationally related to valid legitimate correctional interests such as

security and budgetary concerns and the need for a simplified and efficient food service

system.  In *Williams*, 343 F.3d at 217, the United States Court of Appeals for the Third

Circuit held that a prison's providing vegetarian meals to Muslim inmates, rather than Halal

meals with meat, does not violate the Free Exercise Clause because such a decision "is

rationally related to the legitimate penological interests, namely simplified food service,

security, and budgetary constraints."  Thus, the first *Turner* factor weighs in favor of the

Corrections Defendants.

As to the second factor, Payne acknowledges that he was able to request one of the

available religious diets, or to choose the alternative protein diet.  The second *Turner* also

factor weighs in favor of the Corrections Defendants.  *See Williams*, 343 F.3d at 219.

With respect to the third factor, the Corrections Defendants have articulated the

impact that accommodation of Payne's requests, beyond the accommodations already in

9

place, would have on prison guards, other inmates, and on the allocation of prison resources generally.  (Doc. 20, pp. 10-11).  Specifically, accommodating Payne's special requests would foster favoritism, would require the establishment of a separate kitchen or segregated handling procedures, would require additional kitchen workers, and would result in disruption to the prison's operations.  (*Id.*).  This factor weighs in favor of the Corrections Defendants.

Finally, "the [fourth factor] inquiry is whether there are alternatives that would impose only '*de minimis* cost to valid penological interests.'"  *Fraise v. Terhune*, 283 F.3d 506, 520 (3d Cir. 2002) (quoting *Turner*, 482 U.S. at 91).  Payne acknowledges that he was provided alternative religious diets or a protein diet.  Additional alternatives cannot be provided at a *de minimis* cost, monetary, or otherwise.  Providing a specific Halal meal would increase costs and would jeopardize staff and inmate security and the orderly administration and operation of the prison.

It is clear that SCI-Mahanoy took Payne's request for religious accommodation seriously and made a good faith effort to accommodate his rights within the constraints of appropriate and reasonable institutional security concerns.  Therefore, the Court will dismiss Payne's First Amendment claim.

### D.     Religious Land Use and Institutionalized Persons Act of 2000

Section 3 of  the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides, in relevant part, that "[n]o government shall impose a substantial

burden on the religious exercise of a person residing in or confined to an institution . . . even

if the burden results from a rule of general applicability," unless the government establishes

that the burden furthers "a compelling interest," and does so by the "least restrictive means."

42 U.S.C. § 2000cc-1(a)(1)-(2).  RLUIPA defines "religious exercise" to include "any

exercise of religion, whether or not compelled by, or central to, a system of religious belief."

42 U.S.C. § 2000cc-5(7)(A); *see also Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005).

Although Congress intended that RLUIPA be construed "in favor of broad protection of

religious exercise," *see* 42 U.S.C. § 2000cc-3(g), Congress also "anticipated that courts

would apply the Act's standard with 'due deference to the experience and expertise of

prison and jail administrators in establishing necessary regulations and procedures to

maintain good order, security and discipline, consistent with consideration of costs and

limited resources.'"  *Cutter*, 544 U.S. at 723.  Congress indicated that in the event an

inmate's request for religious accommodation would "become excessive, impose unjustified

burdens on other institutionalized persons, or jeopardize the effective functioning of an

institution, the facility would be free to resist the imposition."  *Id.* at 726.

             1.    Monetary Damages

                 a.    *Individual Liability*

Payne cannot recover monetary damages against the Corrections Defendants in

their individual capacities under RLUIPA.  It is well-settled that RLUIPA does not permit an

action for damages of any sort against state officials in their individual capacities.  *See*

*Sharp v. Johnson*, 669 F.3d 144, 155 (3d Cir. 2012).  The Corrections Defendants' motion will be granted in this regard.

b.    *Official Capacity*

Conversely, Payne can proceed against the Corrections Defendants in their official capacities.  *See Kelley Bey v. Keen*, No. 13-CV-1942, 2014 WL 3563475, at *13 (M.D. Pa. July 17, 2014) (holding that official capacity RLUIPA claims against county officials was not barred by the Eleventh Amendment which only applies to states (citing *Opulent Life Church v. City of Holly Springs, Miss.,* 697 F.3d 279, 289-90 (5th Cir. 2012) (holding that while states may not be held liable for money damages under RLUIPA, municipalities and counties may)).

Under RLUIPA, the plaintiff must show that his religious exercise has been burdened substantially by the challenged conduct.  *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007).  "[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs."  *Id.* at 280.  The plaintiff bears the initial burden of demonstrating that a prison institution's policy or official practice has substantially burdened the inmate's religious practice.  *Holt v. Hobbs*, 574 U.S. 352, 360 (2015).  If the plaintiff shows that prison administrators' actions or inactions have imposed a substantial burden on

12

the exercise of his religion, the burden shifts to the prison administrator to establish that the

challenged conduct furthers a compelling governmental interest and that it is the least

restrictive means of furthering that interest. *Id.* at 362.

The initial burden falls on Payne to demonstrate that an SCI-Mahanoy policy has

substantially burdened the practice of his religion. Payne has failed to establish any

substantial or undue burden on his exercise of religious beliefs. He alleges that the

Corrections Defendants failed to provide "nutritionally adequate meals that conform to his

religious beliefs." (Doc. 18-1 ¶¶ 53, 55-56). He concedes that he was provided alternative

religious meals. However, he alleges that these meals were vegetarian, not nutritionally

adequate, and did not contain certified Halal meat. The United States Court of Appeals for

the Third Circuit has held that providing only vegetarian meals to accommodate Halal-

observant inmates is constitutionally acceptable. *See Riley v. DeCarlo*, 532 F. App'x 23,

27-28 (3d Cir. 2013); *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011); *Williams*, 343

F.3d at 217-21. Payne does not identify how his religion was targeted or intentionally

burdened by any of the Corrections Defendants, and the Court cannot discern any such

burden on the practice of his religion. Accordingly, the Court will grant the Corrections

Defendants' motion to dismiss the RLUIPA claim.

### E. Fourteenth Amendment Claim

The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall "deny to any person within its jurisdiction the equal protection of the laws," which is

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.* Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The plaintiff must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Prison inmates are not members of a protected class. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class).

Payne asserts that members of other religious groups, specifically Jewish inmates, were provided kosher meals, while he was denied a certified Halal meal. However, Payne's affiliation with a particular faith group was not the reason for the denial of his request. Rather, the denial was based on security and budgetary reasons and the need for an efficient food service system. Payne has failed to allege how any similarly situated faiths are treated differently from Muslims. *See Williams*, 343 F.3d at 220 (holding that failure to provide a diet containing Halal meats when a vegetarian diet is available does not violate the First Amendment or Equal Protection Clause). Accordingly, the Court will grant the

Corrections Defendants' motion to dismiss with respect to Payne's Fourteenth Amendment equal protection claim.

## IV.   **Leave to Amend**

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Payne leave to amend his complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  Payne's claims are factually and legally flawed.  Moreover, Payne has filed an amendment to the complaint and has failed to remedy the deficiencies.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile.").  Therefore, the Court finds that granting further leave to amend would be futile.

## V.   **Federal Rule of Civil Procedure 4(m)**

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  Jody Smith, Elisha Friendman, and Maryann Robbins were named in the complaint that was filed on July 26, 2021 and, to date, have not been served in this

15

case. The Court must engage in a two-step process in determining whether to dismiss the non-served Defendants or grant Payne additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Payne failed to establish good cause. After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Payne that the action against Jody Smith, Elisha Friendman, and Maryann Robbins was subject to dismissal and directed him to show cause why the action against these Defendants should not be dismissed pursuant to Rule 4(m). (Doc. 23). Payne failed to respond to the Rule 4 show cause order, and his *pro se* status is not good cause to excuse his failure to timely serve these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon

the lack of any reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Payne failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m).  It is Payne's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.  (*See* Doc. 7 ¶ 7) (advising Payne that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Payne's lack of good faith effort to serve Jody Smith, Elisha Friendman, and Maryann Robbins despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances.  Accordingly, the non-served Defendants will be dismissed from this action.

VI.     **Conclusion**

The Court will grant the Corrections Defendants' motion (Doc. 19) to dismiss.  The

Court will also dismiss the action against Jody Smith, Elisha Friendman, and Maryann

Robbins pursuant to Federal Rule of Civil Procedure 4(m).  A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: June 14, 2022